IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRENCE L. BROWN, | ) |
|     Plaintiff / Counter-Defendant | ) LAW NO. 1:17-CV-01244 |
| VS. | ) |
| | ) Judge Coleman |
| SKYLINE FURNITURE MANUFACTURING, INC., | ) Magistrate Judge Weisman |
|     Defendant, and | ) |
| SEA PRODUCTS, INC., AND TED WECKER | ) |
|     Defendants / Counter-Plaintiffs | ) |

**AMENDED COMPLAINT AT LAW AND JURY DEMAND**

Plaintiff Terrence L. Brown, by and through his attorneys, for his Amended Complaint at Law against the Defendants Skyline Furniture Manufacturing, Inc., SEA Products, Inc., and Ted Wecker, states:

1. Terrence L. Brown is and was at all relevant times a resident of Olympia Fields, Cook County, Illinois.

2. Skyline Furniture Manufacturing, Inc. ("Skyline"), is an Illinois corporation with its primary place of business in Thornton, Cook County, Illinois. Skyline is a closely-held corporation in the business of furniture design and manufacture.

3. SEA Products, Inc. is an Illinois corporation with its primary place of business in Thornton, Cook County, Illinois. SEA Products is affiliated with Skyline in that the two corporations share offices, share showrooms, share staff, and share financial resources. On information and belief, SEA Products and Skyline also have several common owners or major shareholders.

4. On information and belief, Ted Wecker is and was at all relevant times a resident of Chicago, Cook County, Illinois. Mr. Wecker presently holds the position of Skyline's CEO.

5. Mr. Brown was employed by the Defendants from 1993 until December 29, 2014. Although Mr. Brown remained continuously employed, he at various times was labeled an employee of SEA Products, an employee of Skyline, or an employee of their predecessor and affiliated companies, all at the sole direction of the Defendants.

6. In his 21 years of service, Mr. Brown filled different positions in Skyline and SEA Products, and his many years of hard work and dedication to Skyline and SEA Products helped the business significantly expand its sales and customer base to numerous nation-wide outlets and thereby increased its level of success and profitability.

7. On December 29, 2014, Mr. Brown was a Sales Executive with SEA Products.

8. Mr. Brown first became a shareholder of Skyline in 1997. At the time of his termination, Mr. Brown held 46,000 shares in Skyline, representing approximately 12% of the outstanding shares.

9. Prior to beginning his employment at SEA Products and Skyline, Mr. Brown was diagnosed with multiple sclerosis, but he exhibited no outward signs of the condition. Mr. Brown discussed his condition with Mr. Wecker on at least a yearly basis.

10. During Mr. Brown's period of employment, Defendants made no effort to provide a reasonable temperature-controlled work place despite knowing that Mr. Brown suffered from heat intolerance due to his medical condition.

11. Beginning in 2012 and continuing until the time of his termination, Defendant Ted Wecker and other management personnel of Skyline and SEA Products made numerous and repeated comments that Mr. Brown was "too old" and "too sick" to work.

12. Beginning in 2013 and continuing until the time of his termination, SEA Products and Skyline removed Mr. Brown from numerous customer accounts that he had developed and managed, and reassigned those accounts to other employees while assigning him less profitable accounts. This change in accounts assigned to Mr. Brown caused a reduction in Mr. Brown's perceived value and profitability, and was used as the basis to deny salary increases to Mr. Brown.

13. In May 2014, Mr. Brown was diagnosed with and treated for colon cancer.

14. When Mr. Brown informed Mr. Wecker of his then recent diagnosis of and treatment for colon cancer, Mr. Wecker said, "I have to get you out of here."

15. By his words and actions, Mr. Wecker made it clear to Mr. Brown that Mr. Wecker was looking to force Mr. Brown out of his employment before his multiple sclerosis and colon cancer might worsen.

16. On December 29, 2014, Mr. Wecker informed Mr. Brown that his employment with SEA Products was immediately terminated. During this conversation, Mr. Wecker stated that Mr. Brown was "too old," "had health problems," and "had no future at Skyline."

17. Immediately after terminating Mr. Brown's employment with SEA Products, Mr. Wecker stated that Skyline would purchase Plaintiff's stock for $15 per share. When Mr. Brown inquired about the price, Mr. Wecker falsely stated as fact that the stock was worth $15 per share. When Mr. Brown asked about a third-party valuation of the company to determine a fair share price, Mr. Wecker refused to have one conducted.

18. Mr. Brown returned to the Skyline office on December 30, 2014. He again questioned Mr. Wecker about the value of his Skyline shares. Mr. Wecker again stated that the shares were worth $15 per share. In an effort to convince Mr. Brown to sell his shares, Mr. Wecker promised to notify Mr. Brown of any sale of Skyline stock that occurred in the subsequent eighteen

(18) months and to pay him "the additional amount based on the selling stock price" above $15 per share, "less $75,000."

19. In reliance on Mr. Wecker's statements, Mr. Brown sold his stock back to Skyline for $15 per share.

## COUNT I – FRAUDULENT MISREPRESENTATION
## AGAINST SKYLINE AND SEA PRODUCTS

20. Mr. Brown incorporates the allegations of Paragraphs 1 through 18 as if fully stated herein.

21. Mr. Wecker, acting on behalf of Defendants SEA Products and Skyline and as part of a scheme to defraud Mr. Brown of his share value, terminated Mr. Brown, placed him in a circumstance of financial distress, and falsely represented that the value of the company stock as of December 2014 was $15 per share. Mr. Wecker did not state the value as a matter of opinion but rather expressed the share value as a true, certain, and affirmative fact upon which Mr. Brown could rely.

22. When Mr. Brown questioned Mr. Wecker about the share value, Mr. Wecker falsely promised to make additional payments if the Skyline stock sold at a greater price in the subsequent eighteen (18) months, subject to a reduction of the total difference by $75,000. Mr. Wecker made this promise knowing that he could control any such sale and thereby prevent Mr. Brown from obtaining any additional value for his shares.

23. Mr. Wecker made the false representation of value and the false promise of future payment as part of a scheme to induce Mr. Brown to sell his stock for substantially less than its true value.

24. Mr. Wecker knew that the Skyline stock was worth greater than $15 per share, or acted in reckless disregard of whether the quoted price represented the true, fair, and reasonable

value. Specifically, Mr. Wecker admitted to Mr. Brown in an email dated July 11, 2016, that he "made Terry retire" and had "under valued his ownership."

25. Mr. Brown reasonably relied upon Mr. Wecker's false representation and promise. Mr. Brown relied upon Mr. Wecker's superior position as CEO of Skyline, superior access to financial information about Skyline and its associated corporations, and superior knowledge of the company's "off-the-books" assets and liabilities. Mr. Brown also operated under a false sense of security created by Mr. Wecker's false assurances that the share value was accurate but that Skyline would pay additional value for his shares over the next 18 months if there was a sale for more than $15 per share.

26. Mr. Brown relied upon the false statements and misrepresentations to his detriment. Subsequent to selling his stock back to the company, Mr. Brown obtained an independent evaluation by a CPA, who placed the true value of the stock in December 2014 at $60 to $150 per share, or 4 to 10 times the false stated value.

27. On information and belief, subsequent to the stock transaction with Mr. Brown, Skyline shifted corporate funds to SEA Products which made it appear as though Skyline's stock was not worth more than $15 per share.

28. Mr. Wecker acted willfully and with wanton disregard of Mr. Brown's rights.

29. As a result, Mr. Brown has suffered damages, including the value of the sold shares that was not paid and remains unpaid.

30. In conducting their business, which included the employment of Mr. Brown and the purchase of his company stock, SEA Products and Skyline failed to adhere to their separate corporate status and instead commingled funds, equipment, assets, and employees. Therefore, this Court should treat SEA Products and Skyline as alter egos and ignore their separate corporate status for the purpose of joint and several liability in this case.

WHEREFORE, Plaintiff Terrence L. Brown requests that this Court enter judgment in his favor and against Defendants Skyline and SEA Products, jointly and severally, in an amount in excess of $100,000 to fairly compensate him for his losses, including: compensatory damages for the difference between the sale price stated of $15 per share and the true, fair, and reasonable value of the Skyline shares, or in the alternative restitution for the unjust enrichment to SEA Products and Skyline of obtaining Brown's shares without paying fair remuneration; for punitive damages; and for such further relief as the court deems appropriate.

### COUNT II – UNJUST ENRICHMENT
### AGAINST SKYLINE AND SEA PRODUCTS

31.Terrence L. Brown withdraws Count II.

### COUNT III – BREACH OF FIDUCIARY DUTY
### AGAINST TED WECKER

32.Terrence L. Brown incorporates the allegations of Paragraph 1 through 29 as if fully stated herein.

33.On information and belief, in December 2014, Defendant Ted Wecker was a major shareholder of Skyline's outstanding stock.

34.In his capacity as an officer and major shareholder of Skyline, Mr. Wecker owed fiduciary duties to Skyline shareholders, including Mr. Brown. Among the fiduciary duties Mr. Wecker owed to Mr. Brown were the duties of utmost loyalty, good faith, honesty, and a duty to disclose all material facts relevant to Mr. Brown's shareholder interest.

35.Mr. Wecker breached fiduciary duties owed to Mr. Brown by failing to disclose the true, fair, and reasonable value of the Skyline shares, by misrepresenting the true share value, and by acting in bad faith to induce Mr. Brown to sell his shares for less than their true value.

36.Mr. Wecker acted willfully and with wanton disregard of Mr. Brown's rights.

37. Mr. Wecker also personally benefitted from Skyline's purchase of Mr. Brown's shares because the number of outstanding Skyline shares was reduced, thereby giving Mr. Wecker a majority interest in Skyline; after this transaction, Mr. Wecker's ownership increased from 49% to almost 56% of the outstanding shares of Skyline stock.

38. As a proximate result of Mr. Wecker's breaches of fiduciary duty, Mr. Brown has suffered damages, including the value of the sold shares that was not paid and remains unpaid.

WHEREFORE, Plaintiff Terrence L. Brown requests that this Court enter judgment in his favor and against Defendants Skyline and SEA Products in an amount in excess of $100,000 to fairly compensate him for his losses, including: compensatory damages for the difference between the sale price stated of $15 per share and the true, fair, and reasonable value of the Skyline shares, or in the alternative restitution for the unjust enrichment to SEA Products and Skyline of obtaining Brown's shares without paying fair remuneration; for punitive damages; and for such further relief as the court deems appropriate.

### COUNT IV – VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (29 U.S.C. § 2601 *et seq.*) AGAINST SEA PRODUCTS

39. Terrence L. Brown incorporates the allegations of Paragraph 1 through 18 as if fully stated herein.

40. This court has jurisdiction pursuant to 29 U.S.C. § 2617(a)(2), which provides that an action under the Family and Medical Leave Act (FMLA) "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

41. SEA Products is an employer for purposes of the FMLA and at all relevant times employed over 50 persons.

42. Mr. Brown was an employee of SEA Products who, as of December 2014, had worked more than 1,250 hours of service for SEA Products during the previous 12-month period

and had been continuously employed by SEA Products for more than 12 months since the commencement of his employment.

43. As a result of his diagnoses of multiple sclerosis and colon cancer at the time he was terminated on December 29, 2014, Mr. Brown would have been entitled to FMLA leave when either medical condition necessitated it.

44. SEA Products and, in particular, its CEO, Mr. Wecker, knew that Mr. Brown suffered from serious health conditions at the time of his termination. Despite this knowledge, on December 29, 2014, SEA Products preemptively terminated Mr. Brown because he was "too sick," and it knew or believed that Mr. Brown would likely require FMLA leave for personal medical purposes in the future.

45. SEA Products unlawfully interfered with, restrained, and denied Mr. Brown's FMLA rights in violation of 29 U.S.C. § 2615(a)(1).

46. SEA Products' actions were in willful and wanton violation of Mr. Brown's FMLA rights.

47. As a proximate result of Defendant's violations, Mr. Brown is entitled to and seeks recovery of damages under 29 U.S.C. § 2617(a) equal to the amount of back wages and employment benefits that he lost from December 29, 2014 to the present date, the amount of front wages from the present date to his retirement date, interest on all amounts at the prevailing rate, and liquidated damages as provided by statute.

48. Pursuant to 29 U.S.C. § 2617(a)(3), Mr. Brown is entitled to and seeks recovery of reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff Terrence L. Brown requests that this Court enter judgment in his favor and against Defendants Skyline and SEA Products for compensatory and liquidated

damages, punitive damages, plus costs and attorneys' fees, and further relief as the court deems appropriate.

## COUNT V – ILLINOIS WAGE PAYMENT AND COLLECTION ACT
## AGAINST SEA PRODUCTS

49. Terrence L. Brown incorporates the allegations of Paragraph 1 through 18 as if fully stated herein.

50. At the time of his termination from his employment by SEA Products, Mr. Brown had earned but not used more than three weeks of vacation time.

51. SEA Products did not pay Mr. Brown the monetary equivalent of the earned vacation as part of his final compensation, in violation of 820 Ill. Comp. Stat. 115/5.

52. Mr. Brown is entitled to and seeks the monetary equivalent of all earned vacation as of December 29, 2014, plus damages at the statutory rate of 2% per month since his termination to the present date, plus costs and attorneys fees incurred in collecting this compensation.

WHEREFORE, Plaintiff Terrence L. Brown requests that this Court enter judgment in his favor and against Defendant SEA Products, plus costs and attorneys' fees, and further relief as the court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by a twelve-person jury.

Dated: March 22, 2017

                                          Respectfully submitted,

                                          **TERRENCE L. BROWN**

                                          By   */s/ Robert B. McMonagle*
                                          Robert B. McMonagle  ARDC No. 6229831
                                          LANE & WATERMAN LLP
                                          220 N. Main Street, Suite 600
                                          Davenport, IA  52801

         (563) 324-3246
         (563) 324-1616 *(Facsimile)*
         rmcmonagle@L-WLaw.com

         Thomas A. Smith
         Senak Keegan Gleason Smith &
         Michaud, Ltd.
         621 S. Plymouth, Suite 100
         Chicago, IL 60605
         (312) 214-1400
         (312) 214-1401 *(Facsimile)*
         tsmith@skgsmlaw.com

         **ATTORNEYS FOR PLAINTIFF /**
         **COUNTER-DEFENDANT**
         **TERRENCE L. BROWN**

**CERTIFICATE OF SERVICE**

   I hereby certify that on March 22, 2017, the foregoing pleading was filed electronically and was served upon counsel of record using the Court's electronic filing system.

             */s/ Robert B. McMonagle*
             Robert B. McMonagle