UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRENCE L. BROWN, | ) | |
| | ) | |
| Plaintiff/Counter- | ) | Case No. 17-cv-1244 |
| Defendant, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| SKYLINE FURNITURE | ) | |
| MANUFACTURING, INC., | ) | |
| | ) | |
| Defendant, and | ) | |
| | ) | |
| SEA PRODUCTS, INC. and TED WECKER, | ) | |
| | ) | |
| Defendants/Counter- | ) | |
| Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Terrence Brown, brought this action against his former employer, Sea Product, Inc., as well as its CEO Ted Wecker and related corporation Skyline Furniture Manufacturing, Inc. ("SFM"). Brown alleges that SFM defrauded him and that Wecker breached his fiduciary duty in connection with the repurchase of Brown's SFM stock, and that Sea Products engaged in FMLA interference. Sea Products and Ted Wecker, in turn, raised breach of contract counterclaims based on Brown's alleged failure to repay loans made during his employment. The defendants now move for summary judgment on Brown's claims and on their counterclaim. For the reasons set forth herein, that motion [73] is granted in its entirety.

**Background**

The following facts are undisputed unless otherwise noted. Sea Products is a furniture sales and management company that sells products for a variety of different furniture manufacturers

1

across the United States.  SFM is a separately incorporated furniture manufacturing company.  Sea

Products is also the sole member of Skyline Imports, LLC, which imports furniture manufactured

outside the United States.  Since SFM's formation, SFM has served solely as a furniture

manufacturer, with Sea Products serving as SFM's management and sales organization.  Brown

worked as a salesman for Sea Products from before 1996 to 2014.  After SFM's creation, Brown also

served as SFM's corporate secretary.  From 1996 to 2014, SFM paid Sea Products annually based on

Sea Products' sales volume and management expenses, and, as corporate secretary, Brown was privy

to financial statements reflecting these payments.  Between 2000 and 2014, Brown acquired 46,000

shares of SFM stock, all of which were acquired for $1 per share.

Prior to 2014, Wecker claims that he had been dissatisfied with Brown's performance and

had discussed Brown's transition out of Sea Products.  In July 2014, Wecker decided that he would

separate Brown from Sea Products by the end of the year.  At that time, Brown had been diagnosed

with multiple sclerosis and colon cancer.  Brown, however, had not requested medical leave, was not

unable to perform his job, and was not planning to take medical leave in the future.

In early 2014, Wecker engaged the Peakstone Group to explore a potential sale of Sea

Products, SFM, and Skyline Imports.  Peakstone contacted potential investors, and eight potential

investors submitted non-binding indications of interest with respect to the combined entities.  None

of the investors indicated interest in SFM as a stand-alone entity or identified the value they assigned

to SFM, and no formal evaluation was conducted.  Ultimately, none of the indications of interest

were found to be favorable enough to warrant further action.

In anticipation of his eventual transition out of leadership positions with SFM and Sea

Products, Wecker decided that he would like to make voluntary offers to repurchase the stock of

SFM's minority shareholders.[1]  At the time, Wecker believed that a minority interest in SFM was worth a few dollars at most, based on the limited marketability of a minority interest in a closed corporation.  Nevertheless, Wecker decided to offer the minority shareholders $15 per share, a choice that Wecker attributes to his desire to reward long-term employees as one of his last acts as SFM's controlling owner.  In early December 2014, Wecker informed Brown that he would be terminated at the end of the month, and, accepting Brown's version of events as true, informed Brown that SFM's shares were worth $15 and that SFM was willing to purchase Brown's shares for that amount.

On December 29, 2014, Wecker and Brown spoke again.  After discussing the logistics of Brown's separation from Sea Products, they again addressed the stock purchase offer.  Brown asserted that, based on his knowledge of the Peakstone process, he believed the stock was worth more than $15 per share.  It is disputed whether Wecker, in response, stated that the value of the stock was $15 per share or that the offer was only for $15 per share.  At the time of the offer, Wecker did not believe that the stock was actually worth $15 per share, and he did not believe that he was representing that it was worth $15 per share.  Brown did not know of any valuation of SFM stock that had been performed, and did not seek to conduct his own valuation.  Instead, he told Wecker that he would like to talk to his accountant before reaching a decision.

The next day, Brown met with his accountant.  Brown did not share SFM's financials or ask for an assessment of its value.  Instead, his focus was on the stock purchase's impact on his taxes.  Based on Brown's concerns, Wecker bifurcated the repurchase into two separate tax years.  In response to Brown's belief that the stock was worth more than $15 per share, Wecker also included an eighteen-month price guarantee, providing that if any entity paid more than $15 per share for

---

[1] Although Brown disputes this and subsequent statements of facts, he does so by referencing "all evidence cited in his Memorandum in Resistance at pp. 5–6."  This response does not comply with the plain requirements of Local Rule 56.1(b)(3)(B), and is therefore disregarded by the Court.

SFM's stock within an eighteen month period SFM would pay Brown the price difference. On December 30, 2014, Brown executed this modified agreement and resold his 46,000 shares to SFM for $15 per share, for a total of $690,000.00. Brown subsequently emailed a friend, stating that he had retired and that the company's repurchase of his stock constituted a windfall for him. On June 30, 2015, however, Brown contacted Wecker to ask for his job back. Wecker refused. When Brown again questioned the fairness of the stock buyback, Wecker offered to reverse the transaction, but Brown declined. In 2016, Wecker transferred some of his SFM shares. At that time, a valuation report concluded that the value of minority shares of SFM was $2.90 per share.

During the course of his employment, Brown took out and repaid loans from Sea Products. In 2013, Sea Products provided Brown with a $51,000.00 loan, which Brown agreed to repay. Sea Products also loaned Brown $36,830.00 for the remodel of his home bathroom, which Brown agreed to repay. To date, Brown has repaid $40,000, leaving $47,830.00 outstanding. Brown states that Wecker emailed him that these debts had been "written off." Wecker explained that although he had not forgiven the debts and issued Brown a 1099, he also was not previously pursuing Brown for the money.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**Discussion**

Brown first alleges that SFM defrauded him. In order to prove fraud, a plaintiff must establish (1) a false statement of material fact, (2) the defendant's knowledge that the statement was false, (3) the defendant's intent that the statement would induce reliance, (4) the plaintiff's actual reliance upon the truth of the statement, and (5) damages. *Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007).

Brown alleges that Wecker fraudulently misrepresented that the value of SFM's stock was only $15 per share. In order to survive summary judgment, Brown would need to adduce at least some evidence establishing that this statement was false and that SFM' stock was in fact worth more. The only evidence Brown has adduced, however, is unavailing. As an initial matter, the potential indications of interest that resulted from the Peakstone process are unhelpful because they did not value SFM as a stand-alone entity and therefore are not evidence of the value of Brown's minority interest in SFM. Brown, in his response, cites directly to a declaration from supposed expert Todd French establishing a share price of $105.48. As an initial matter, French's declaration is not addressed by any of Brown's Rule 56.1 statements, and therefore is not properly before this Court. *See generally Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664–65 (N.D. Ill. 2015) (Feinerman, J.) (collecting over 20 cases all holding that facts must be presented through the framework of the Rule 56.1 statement and that parties' briefs are not allowed to cite directly to record materials). Even if French's declaration is properly before this Court, moreover, it is wholly inadequate. French's declaration, in its entirety, states that:

> 1. In accordance with my Expert Report dated April 6, 2018, previously produced to the Defendants, the fair value of Mr. Brown's shares as of December 2014 is between $4.9 million to $11.2 million, or approximately $105.48 to $243.31 per share.
> 2. In accordance with my Expert Report dated April 6, 2018, Skyline Furniture Manufacturing, Inc. accounted for 60.1% of the consolidated net sales of the three affiliated Skyline entities during the 23-month period ended November 30, 2014.

> 3. In accordance with my Expert Report dated April 6, 2018, 100%
> of the revenues received by Sea Products, Inc. during the 23-month
> period ended November 30, 2014 were received from its affiliates
> Skyline Furniture Manufacturing, Inc. and Skyline Imports, LLC.

Brown did not provide this Court with the underlying Expert Report, with any evidence explaining how French reached these conclusions, or with any evidence establishing that French is qualified to offer these opinions. Absent such information, French's statements are entirely inadmissible. *Wendler & Ezra, P.C. v. American Intern. Group, Inc.*, 521 F.3d 790, 792 (7th Cir. 2008); *see also Mid-State Fertilizer Co. v. Exchange Nat. Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). Brown separately asserts, in a declaration, that he received an email from Wecker admitting that Wecker had undervalued his shares. Again, however, this record evidence was cited directly in the brief and not in Brown's Rule 56.1 statements, and therefore is not properly before this Court. *Mervyn*, 142 F. Supp. 3d at 664–65. Even if it were, moreover, from context it is clear that this statement memorialized Brown's position in a prior conversation and did not constitute an admission that Wecker had underpaid Brown. Accordingly, Brown has failed to identify a genuine dispute of material fact as to the value of the shares and has therefore failed to establish that the defendants engaged in a false representation of material fact.[2] Summary judgment is accordingly warranted on Brown's fraud claim.

Brown separately alleges that Wecker breached his fiduciary duty to Brown. In order to prevail on a breach of fiduciary duty claim, a plaintiff must point to evidence establishing the existence of a fiduciary duty, the breach of that duty, and damages proximately caused as a result of that breach. *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 698, 820 N.E.2d 1094 (2004). Brown's complaint alleges that Wecker breached his fiduciary duty to Brown by failing to

---

[2] The defendants appear to address an additional theory of fraud based on Wecker's promise to pay the difference between the $15 per share price and any subsequent share repurchases within an eighteen-month period. Brown's response fails to address this argument, and this Court therefore assumes that it has been waived.

disclose all material facts or to disclose the true, fair, and reasonable value of SFM shares. As previously noted, however, Brown has failed to establish that Wecker withheld any information or deceived him as to the reasonable price of SFM's shares. *See also Scarabello v. Reichle*, 856 F. Supp. 404, 408 (N.D. Ill. 1994) (Nordberg, J.) (recognizing that because materials regarding a closely held corporations stock valuation must be turned over on request, they do not constitute special facts known only to the controlling shareholder and failure to disclose them therefore does not constitute a material omission). Because there is no evidence that the $15 share price undervalued Brown's shares, moreover, Brown has failed to adduce any evidence establishing that he was damaged by any misrepresentation that did occur. Brown has accordingly failed to establish a genuine dispute of material fact as to whether Wecker breached his fiduciary duty.

Brown also alleges that Sea Products interfered with his rights under the Family and Medical Leave Act (FMLA). In order to prove an interference claim under the FMLA, a plaintiff must establish that (1) he was eligible for FMLA protection, (2) his employer was a covered employer under the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave under the FMLA, and (5) his employer denied him the FMLA benefits to which he was entitled. *Brown v. Automotive Components Holdings, LLC*, 622 F.3d 685, 689 (7th Cir. 2010). Brown, however, has failed to offer any evidence establishing that he provided notice that he planned to take FMLA leave. To the contrary, it is undisputed that Brown never sought to take leave in 2014, did not predict that he would need to take leave in the future, and was not unable to work after 2014 as a result of his conditions. Brown, without citation to any caselaw, argues that he was preemptively terminated based on his employer's perception that he would eventually seek to take FMLA leave. There is no evidence to suggest that Sea Products anticipated that Brown would eventually need FMLA leave. Such preemptive interference arguments, moreover, have been squarely rejected by the Seventh Circuit. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827–28 (7th

7

Cir. 2012).  Brown has accordingly failed to provide sufficient evidence to prevail on his FMLA claim.

Sea Products also seeks summary judgment on its breach of contract counterclaim against Brown.  In order to state a claim for breach of contract, a plaintiff must establish the existence of a valid and enforceable agreement, substantial performance by the plaintiff, a breach by the defendant, and resulting damages.  *Martin v. State Farm Mut. Auto. Ins. Co.*, 348 Ill. App. 3d 846, 855, 808 N.E.2d 47 (2004).  Here, it is undisputed that Brown agreed to pay back SFM's loans, that Brown failed to repay those loans, and that there remained an outstanding balance of $47,830.00.  Brown, however, asserts in his declaration that Wecker and Sea Products agreed to write this balance off as "severance," and that this claim is therefore subject to the defense of accord and satisfaction.

The defense of accord and satisfaction, however, pertains to a contractual method of discharging a debt or claim.  *Auto-Owners Ins. Co. v. Konow*, 2016 IL App (2d) 150860, at ¶9, 59 N.E.3d 70.  "A creditor's acceptance of a payment of less than the amount claimed 'will not constitute an accord and satisfaction of the entire claim unless it can be demonstrated that the creditor intended to accept it as full satisfaction.'"  *Id.* (quoting *Fremarek v. John Hancock Mutual Life Ins. Co.*, 272 Ill.App.3d 1067, 1071, 651 N.E.2d 601 (1995)).  In order to establish an accord and satisfaction, there must be evidence of (1) an honest dispute between the parties as to the amount owed between them; (2) a tender of payment with the explicit understanding that it is a full payment of all demands; and (3) an acceptance of the payment by the creditor with the understanding that it is accepted as full payment.  *Koules v. Euro-American Arbitrage, Inc.*, 293 Ill.App.3d 823, 829, 689 N.E.2d 411 (1998).

Taking the evidence in the light most favorable to Brown, Wecker told Brown that he had given up on collecting the $47,830 that Brown owed and that he wrote it off "as severance."  These statements, however, do not establish that Brown offered to tender payment (here the forgiveness of

8

any severance he was owed) as full payment for his debt, or that Wecker accepted any such offer.

Brown, moreover, has failed to provide any evidence suggesting that there an "honest" dispute

between the parties as to his entitlement to severance. To the contrary, Brown's Rule 56.1

statements contain nothing to suggest that he was entitled to severance or that he believed he was

entitled to severance. It is undisputed, moreover, that but for the purported accord and satisfaction

Brown actually owed Sea Products the amount at issue. Brown has accordingly failed to present

sufficient evidence to meet the elements of the accord and satisfaction defense. Sea Products is

therefore entitled to summary judgment on its breach of contract counterclaim.

**Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment [73] is granted in

its entirety. The Court enters judgment in favor of the defendants and awards Sea Products

$47,830.00, plus costs and pre-judgment interest.


IT IS SO ORDERED.

Date: 5/23/2019

Entered: _____
      SHARON JOHNSON COLEMAN
      United States District Court Judge